UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TIPS EXPORTS, INC.,

                Plaintiff,

         - v -

MUSIC MAHAL, INC.; "SUNNY", Individually
and d/b/a "MUSIC MAHAL"; VERMANI, INC.;
Vermani, Inc. d/b/a "MUSIC MAHAL";
SATNAM SINGH A/K/A SATNAM SINGH
CHOHAN, Individually and d/b/a "MUSIC
MAHAL" and d/b/a "ORIGINAL MUSIC";
GURNAM SINGH, Individually and d/b/a
"MUSIC MAHAL"; DALIP KUMAR A/K/A
DALIP KOMAR AND AKA DALIP VERMANI
Individually and d/b/a "MUSIC MAHAL"; HIGH
TECH VIDEO CORP. A/K/A HIGH-TECH
VIDEO, INC.; d/b/a "MUSIC MAHAL" and
d/b/a ORIGINAL MUSIC; GITA SHAH
Individually and d/b/a "MUSIC MAHAL" and
d/b/a ORIGINAL MUSIC; SOCA HOUSE, INC.,
RAJ BOISE, Individually and d/b/a "SOCA
HOUSE" and d/b/a "INDIAN DVD KING";
GURPREET SINGH BAINS Individually and
d/b/a "SOCA HOUSE", d/b/a "DVD KING" and
d/b/a "INDIAN DVD KING"; "TAJ AUDIO
VIDEO INC.; NIJJER GROCERY and
VARIETY INC. Individually and d/b/a "TAJ
AUDIO VIDEO"; D.S. NIJJER, Individually and
d/b/a "TAJ AUDIO VIDEO"; AJITPAL SINGH,
Individually and d/b/a 'TAJ AUDIO VIDEO";
DALBIR SINGH, Individually and d/b/a "TAJ
AUDIO VIDEO" and JOHN DOES 1-14,

                Defendants.
------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

CV-01-5412 (SJF)(VVP)

      This is a case of copyright infringement. After granting the plaintiff Tips Exports, Inc.'s

(hereinafter "Tips") motion for summary judgment against all defendants, the Honorable

Raymond J. Dearie referred this matter to the undersigned to conduct a hearing on damages and

to issue a report and recommendation on the amount of damages, as well as attorney's fees and costs, to be awarded to the plaintiff.   This matter was subsequently reassigned to the Honorable Sandra J. Feuerstein, but the referral was undisturbed.

The plaintiff is the owner of various copyrights in Indian music and motion pictures.  The numerous defendants can be divided into three separate and distinct groups, and have been treated as such by the parties: Music Mahal, Inc., "Sunny", Vermani, Inc., Satnam Singh, Gurnam Singh, Dalip Kumar, High Tech Video Corp. and Gita Shah (hereinafter "the Music Mahal defendants")[1]; Soca House, Inc., Raj Boise and Gurpreet Singh Bains, (hereinafter "the Soca House defendants"); and Taj Audio Video Inc., Nijjer Grocery and Variety Inc., D.S. Nijjer,  Ajitpal Singh and, Dalbir Singh (hereinafter "the Taj Audio Video defendants").  The defendants are all alleged to have infringed the plaintiff's copyrights by offering unauthorized copies of the plaintiff's works for sale at their retail establishments.

An evidentiary hearing concerning damages was held before the undersigned at which the Soca House defendants and the Taj Audio Video defendants offered testimony and other evidence.  The Music Mahal defendants have not responded to the plaintiff's request for damages and attorney's fees, and did not participate in the hearing.  The plaintiff chose to rely on affidavits and exhibits it submitted in support of the motion.


# I.  THE EVIDENCE

---

[1]Dalip Kumar, who is named in the complaint as "Dalip Kumar a/k/a Dalip Komar and a/k/a Dalip Vermani," has entered into a stipulation of settlement with the plaintiff under which he has been dismissed from this action.  Accordingly, the reference to the Music Mahal defendants herein does not include him.

## A.    Admissibility of the Defendants' Evidence

Before addressing the merits, the court must determine whether to consider certain evidence offered by the defendants at the hearing.  At the close of business on the Friday prior to the evidentiary hearing, the Soca House and Taj Audio Video defendants produced to the plaintiff documents they wished to introduce at the hearing.  Although the plaintiff had requested these documents on numerous occasions during two years of discovery, they had never been produced.  Further, these documents were the only exhibits the defendants sought to introduce at the hearing.  Plaintiff objected to the admission of these records on the basis of untimely production.

Although these documents should have been produced when requested much earlier during discovery, the plaintiff is unable to articulate any prejudice it has suffered because of the last minute production.  Indeed, the court gave the plaintiff additional time following the hearing to offer further argument on this issue, but no further submissions were filed.  Therefore, the court will consider the documents submitted by the defendants at the hearing and weigh them accordingly.

## B.    Factual Findings

Tips has for a number of years been in the business of producing Indian music sound recordings and motion pictures, as well as acquiring, owning and licensing copyrights in such works.  *See* Declaration of Pradeep Abichandani in Support of Plaintiff's Motion Summary Judgment, Statutory Damages and Attorney's Fees ("Abichandani Decl. I") ¶¶ 4,5.  Their copyrighted works are made available to the public through authorized distributors in various

formats, including audio cassettes, video compact discs ("VCDs"), digital versatile discs ("DVDs"), and compact discs ("CDs").  Notably, however, they had never been made available in videocassette (VHS) format.  Among the authorized distributors for Tips are Viva Entertainment ("Viva"), Super Music ("Super") and United Entertainment ("United").  The various defendants all owned or operated retail stores located in Queens, New York which obtained Tips' products from these distributors.

In the summer of 2001, the plaintiff sent investigators into the defendants' retail stores who determined that the defendants were offering counterfeit copies of the plaintiff's copyrighted works for sale.  Based on the investigators' findings, the instant action was commenced on August 10, 2001 with the filing of a complaint alleging copyright infringement.  Along with the complaint, the plaintiff moved for a preliminary injunction against all the defendants and for a seizure order for the counterfeit products from the defendants' retail stores.  Upon the issuance of the seizure order, the United States Marshals Service, with the assistance of plaintiff's representative Pranav Shah, seized 955 counterfeit items from the Music Mahal defendants, 461 counterfeit items from the Soca House defendants, and 547 counterfeit items from the Taj Audio Video defendants.  *See* Declaration of Pranav Shah in Support of Plaintiff's Motion Summary Judgment, Statutory Damages and Attorney's Fees ("Shah Decl.") ¶ 3; SJX E, F, G, J, I, M.[2]

The Marshals Service also seized from Music Mahal numerous items known to be used for making counterfeit products, including counterfeit artwork, numerous empty CD and DVD

---

[2]The designation "SJX" refers to exhibits submitted by the plaintiff in support of the motion for summary judgment.  The designations "PX" and "DX" refer to the plaintiff's and defendants' exhibits, respectively, submitted at the hearing on October 27, 2003. "Tr." refers to the transcript of the hearing.

jewel boxes, blank VHS tapes, and a shrink wrap machine.  *See* Declaration of Pradeep Abichandani in Support of Plaintiff's Motion Summary Judgment, Statutory Damages and Attorney's Fees ("Abichandani Decl. II") ¶ 25; SJX  F, G, H.  In addition, counterfeit copies of Tips' name and logo, used for distributing pirated works, were found on the premises of Music Mahal.  *Id.* ¶ 26; SJX  G.  To a lesser extent, similar items known to be used for making counterfeit products were also seized at the premises of the Soca House defendants, including counterfeit artwork, empty CD cases, and blank CD and videocassette inserts.  SJX J.  No such materials were seized from the Taj Audio defendants.   See SJX M.

After the seizure, the Music Mahal defendants continued to offer illegal copies of plaintiff's copyrighted works for sale.  *See* Declaration of William M. Poppe in Support of Plaintiff's Motion for Statutory Damages and Attorney's Fees against all Defendants ("Poppe Decl."), ¶ 5.  As a consequence of this activity, the Music Mahal defendants surrendered 190 CDs containing counterfeit sound recordings pursuant to a settlement agreement with the Recording Industry of America.  *Id.*, Ex. 1.  Finally, the Music Mahal defendants have been found liable in numerous copyright infringement litigations in this district.  *See* SJX P.

At the evidentiary hearing, the Soca House defendants offered the testimony of Gurbreet Bains,  the owner of Soca House.   Soca House, which  is also known as Indian DVD King, is a retail establishment that offers Indian music and movies for rent and sale.  Tr. 17-20, 142.  It receives music and video products from various wholesale distributors including Bollywood Online, Bombay Music, Rakhee Imports, Atlantic Audi Video, Viva, United, and Super.  Tr. 20-21.  Only Viva, United and Super, however, sold Tips' products to the defendant Soca House.  Tr. 21-25.  The business relationship between Soca House and the authorized Tips' distributors

was somewhat informal.  Indeed, Bains was unaware that Viva, United and Super were authorized distributors of Tips products.  Tr. 27.  The distributors would either call or stop by the store with promotional sales pitches, or offer for sale the newest releases of Indian music and movies.  *Id.*  The distributors preferred cash transactions, which usually meant a discounted rate for Soca House.  Tr. 44-47, 52;  DX 4, 6-13.  However, a significant number of purchases were paid by check.  Tr. 98, PX A.  Upon the completion of each sales transaction, Viva and Super provided Bains with an invoice or bill which identified the title and manufacturer of each product purchased, a designation of the type of product, the quantity purchased and the sale price.  *See* DX 4, 6-13.  The invoices provided by United, on the other hand, generally did not differentiate between the types of products that were being sold.  Tr. 71-80; DX 14-19.

When Tips' products were delivered to Bains they were packaged either individually in separate casings or jewel boxes, or were stacked loose in various size boxes which contained 50, 100, or perhaps as many as 1,000 pieces.  Tr. 25, 103-106; *see* PX C.  In the ordinary course of business, when CDs, DVDs, VHS tapes and the like were received, Bains did not physically examine them to determine where, or by whom they were manufactured, or whether the plaintiff's logo was displayed on the items.  Tr. 35.

Bains testified that at times the distributors sold him Tips' movies on VHS tapes as opposed to DVDs.  He was unable to produce any invoice or bill, however, reflecting that Soca House purchased movies in VHS format from any of the authorized distributors.  He also conceded that the VHS tapes do not bear the Tips logo even though Tips owned the rights to the films.  Tr. 110-14; PX D and E.  Additionally, Bains claimed that he never received a catalogue of Tips' products, nor did he ever see an advertisement of any sort for Tips' products.  Further,

Bains stated that he never received any correspondence from Tips warning him to refrain from selling counterfeit copies of plaintiff's works through his store. Tr. 111, 123-25.

Also testifying at the hearing was Dalber Singh, the owner of Taj Audio Video, who used the same three authorized Tips' distributors as Soca House. Tr. 163-66. Like Bains, Singh conducted numerous cash transactions with those distributors, and also paid for some of his purchases by check. Tr. 166.

As noted earlier, the Music Mahal defendants offered no testimony at the hearing. Nor did the plaintiff, although the plaintiff offered declarations subscribed by each of its authorized distributors to which the defendants raised no objection. In contrast to Bains' testimony, the declarations of the plaintiff's authorized distributors assert that they only sold legitimate Tips' products to the defendants, packaged individually, and that the merchandise they supplied the defendants could not be confused with the counterfeit goods seized. *See* Declaration of Ravi K. Khan in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment; Declaration of Dalip Adnani in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment; Declaration of Ravi Kapoor in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment. The declarations of the distributors also stated that the Tips movies they sold were in DVD format only. *Id.*

## II. ANALYSIS

### A. Damages

At the copyright owner's election, an infringer of a copyright is liable for either the owner's actual damages, including any lost profits, or statutory damages. *See* 17 U.S.C. § 504(a). If the owner elects statutory damages, the court may award between $750 and $30,000

for each infringement, and may increase the award to as much as $150,000 when the infringement is found to be willful. *See* 17 U.S.C. § 504(c). The standard for determining willfulness "is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded that possibility." *Hamil America, Inc., v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999) (quoting *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir.1993)). On the other hand, "where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." 17 U.S.C. § 504(c)(2). Willful infringement for enhanced damages and innocent infringement justifying reduced damages are not the converse of one another, however. "Thus, it is possible in the same action for a plaintiff not to be able to prove a defendant's willfullness, and, at the same time, for the defendant to be unable to show that it acted innocently." *National Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 476 (S.D.N.Y. 2001) (citing *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986)).

The court has "broad discretion in setting the amount of statutory damages within the minimum and maximum amounts prescribed by the Copyright Act." *National Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001); *accord, e.g., Arclightz and Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 362 (S.D.N.Y. 2003). In determining the amount of statutory damages, the factors to be considered include "the expenses saved and profits reaped by the infringer's actions, the revenues lost by the plaintiff, and the deterrent effect on others beside the defendant, as well as the specific deterrent effect on

the defendants themselves." *Fitzgerald Publishing Co., Inc. v. Baylor Publishing C.,* 807 F.2d 1110, 1117 (2d Cir. 1986). Generally, the statutory maximum is reserved for truly egregious conduct such as where a defendant has been adjudged to have willfully infringed, yet continued the same pattern of behavior in contravention of court order. *See, e.g., Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288-89 (2nd Cir. 1999).

In calculating statutory damages, the focus is on the number of works infringed, not the number of copies or the number of acts of infringement. *See, e.g., Twin Peaks Productions*, 996 F.2d at 1381; *Antenna Television v. Aegean Video Inc.*, No. 95-CV-2328, 1996 WL 298252, at *11 (E.D.N.Y. April 23, 1996); *Arclightz and Films Pvt. Ltd.*, 303 F. Supp. 2d at 361. Thus, for example, a musical composition constitutes a single work for purposes of assessing damages, regardless of how many different ways it may be copied. *See, e.g., Rocking Chair Enterprises, L.L.C. v. Macerich SCG Ltd. Partnership*, 407 F. Supp. 2d 1263, 1268-69 (W.D. Okla. 2005). Similarly, a motion picture constitutes a single work even though unauthorized copies of it are made and offered for sale in both DVD and VHS formats.

Although the plaintiff contends that all of the defendants infringed the plaintiff's copyrights knowingly and willfully, and thus seeks statutory damages at the rate of $10,000 per infringement against each of the three groups of defendants, the court finds distinctions among the defendants which justify different damages assessments. Taking first the Music Mahal defendants, several factors justify an assessment of damages calculated at the rate of $10,000 per work as requested by the plaintiff. Not only were the Music Mahal defendants selling numerous unauthorized copies of plaintiff's works, they also had all of the apparatus and materials for creating the bootleg copies. Moreover, the parties involved with the Music Mahal business have

been found liable for copyright violations in several prior litigations, and yet continued to engage in clearly infringing conduct.  The plaintiff's submissions are not challenged by the Music Mahal defendants.  Thus, there is little question that the Music Mahal defendant's infringement was willful, and that a substantial damages assessment is required to achieve the deterrence purposes of the Copyright Act.

As to the Soca House and Taj Audio Video defendants, the evidence of wilfulness is less compelling.  There is no evidence of prior lawsuits against them or of prior findings of infringement.  The plaintiff argues that ample evidence of wilfulness flows from the fact that they could not have obtained their infringing products from the plaintiff's distributors, and therefore must have known that they were selling unlawful copies of the plaintiff's works.  The plaintiff's proof on this point, however, is weak, consisting solely of boiler-plate written declarations by representatives of the authorized distributors each of which contain identical language stating that they did not distribute counterfeit Tips products.  As authorized distributors, one would hardly expect them to state otherwise.  Because the representatives did not testify in person, and were therefore not subject to cross-examination, the court is unable to assess the credibility of their statements.  More importantly, their assertions are directly controverted by Bains and Singh, who were subject to cross-examination.  Those witnesses asserted that the counterfeit merchandise seized from their stores was purchased from the plaintiff's authorized distributors.  Singh Aff't, ¶ 7; Bains Aff't, ¶ 3.  Bains specifically testified that numerous counterfeit items seized from his store had been purchased from Viva Entertainment, one of the plaintiff's authorized distributors, and he offered as an exhibit a delivery order issued by Viva Entertainment dated July 2, 2001, shortly before the seizure of

goods from Soca House to support his testimony. Tr. 45-52; DX 4. Bains also supplied other

invoices from the other two authorized distributors, Super Music and United Entertainment,

which reflect numerous purchases of the plaintiff's products from them. The court therefore

rejects this aspect of the plaintiff's proof of wilfulness by Soca House and Taj Audio Video.

The testimony by Bains and Singh that they obtained their Tips merchandise from

authorized Tips distributors also undercuts another factual contention offered by the plaintiff in

support of their wilfulness argument, namely, that the defendants must have known their copies

of the plaintiff's works in VHS format were illegitimate because the plaintiff does not offer any

of its products in VHS format. As long as they were receiving the Tips products they were

offering for sale from authorized distributors, they would have no particular reason to question

the fact that they were receiving products in a format, i.e. VHS, that the plaintiff did not in fact

produce. In the absence of proof that Soca House and Taj Audio Video had specific knowledge

that Tips did not offer its products in VHS format, the court cannot conclude that their

possession of VHS tapes of Tips products is proof of wilful infringement.

There is one aspect of the plaintiff's proof as to the Soca House defendants which tends

to establish their knowledge that at least some of their Tips products were not legitimate.

Although they did not possess the apparatus to create infringing copies of the plaintiff's works,

substantial numbers of counterfeit labels with the plaintiff's artwork and empty jewel boxes were

seized during the search of Soca House's store. These items were clearly intended to be used to

package the unlawful copies of the plaintiff's works which were also found at the premises of

Soca House. This leads the court to conclude that the Soca House defendants were likely aware

that some of the Tips products they were selling were not entirely legitimate, notwithstanding

that they came from authorized distributors. Thus, although a damage award equal to that imposed on Music Mahal would not be appropriate, the damage award against Soca House must recognize their knowing participation in infringing conduct.

As to Taj Audio Video, none of the aspects of wilfulness cited above apply. Although many of the counterfeit works found at Taj Audio Video were not packaged properly and did not have proper copyright markings, this alone does not establish knowledge that the copies were illegitimate, particularly in light of the proof that Taj Audio Video was receiving its Tips products from authorized distributors. That Taj Audio Video had a basis for believing the products it was receiving were legitimate is further supported by the fact that at least one of the checks it submitted as payment to an authorized distributor was made payable directly to Tips. The court cannot ignore, of course, that the Taj Audio Video defendants must possess a certain amount of sophistication about their industry and of the possibility that unlawful copies of popular products will enter the stream of commerce. Thus, the court cannot conclude that they were entirely innocent about the counterfeit products in their store given the various irregularities in the packaging and marking of some of the counterfeit products. But as the level of proof of their wilfulness is considerably less than that of Music Mahal and of Soca House, a lesser damages award against them is appropriate.

As noted earlier, the plaintiff seeks statutory damages of $10,000 for each illegal use of plaintiff's copyrighted title or work. As to the Music Mahal defendants of the 955 items seized by the Marshal, plaintiff contends that there are at least 135 instances of copyright infringement of registered copyrights. The plaintiff's count is inaccurate, however, because it appears to reflect not simply the number of works infringed, but takes into account the number of different

ways in which a work was infringed. Thus, for example, if a given sound recording was infringed by including it in two different compilations of sound recordings, the plaintiff considered each compilation as a separate infringement. Or if a video recording was copied in both DVD and VHS formats, each format was considered a separate infringement. This is not consistent with the notion that the focus in awarding statutory damages is on the number of works infringed, not on the number of copies or the number of forms in which the copying takes place. *See, e.g., Rocking Chair Enterprises, L.L.C.*, 407 F. Supp. 2d at 1268-69. And where compilations of works are involved, if the compilation is not authorized by the copyright holder then the compilation does not itself constitute a separate work for purposes of assessing damages. *See, e.g., WB Music Corp. v. RTV Communication Group, Inc.*, 445 F.3d 538, 540-41 (2nd Cir. 2006). By the court's count, reviewing the lists of items seized from Music Mahal, (SJX F), and comparing them to the lists of titles to which the plaintiff claims copyrights, (SJX A), the court finds that the Music Mahal defendants infringed a total of 30 works. At $10,000 per work, the damages award against Music Mahal would total $300,000.

As to Soca House and Taj Audio Video, the plaintiff similarly has overstated the number of works infringed. By the court's count, the Soca House defendants infringed 19 works, while the Taj Audio Video defendants infringed 51 works. *See* SJX J, M. As stated earlier, the court ascribes higher knowledge to Soca House then to Taj Audio Video, justifying a higher per work damage award as against the former. Thus, as to Soca House the court recommends a damage award of $3,000 per work, and as to Taj Audio Video an damage award of $1,000 per work, resulting in a damages award of $57,000 against Soca House and $51,000 against Taj Audio Video.

**B.     Injunctive Relief**

The plaintiff also seeks injunctive relief, which is available under the Copyright Act "to prevent or restrain infringement of a copyright." *See* 17 U.S.C. § 502(a). Injunctive relief is clearly appropriate in this instance given the defendants' substantial infringement of plaintiff's copyrights and their opportunity to continue doing so given the nature of their businesses. Accordingly, the defendants should all be permanently enjoined from reproducing, distributing, manufacturing, or otherwise using plaintiff's sound recordings, name and artwork.

**C.     Attorney's Fees and Costs**

*1.     Liability for Attorney's Fees*

The plaintiff also seek attorney's fees and costs totaling $153,505.02. The Copyright Act allows the court in its discretion to award reasonable attorney's fees and costs to the prevailing party. *See* 17 U.S.C. § 505. Although at one time the rule in the Second Circuit provided that prevailing plaintiffs were generally entitled to an award of fees, *Diamond v. Am-Law Pub. Corp.*, 745 F.2d 142, 148 (2nd Cir. 1984), that rule was abrogated by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), where the Supreme Court held that the standard for awarding fees was identical for both plaintiffs and defendants. The Court there emphasized that the decision was committed to a court's equitable discretion and identified various non-exclusive factors to be considered, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 534-35 and n.19 (quoting *Lieb v. Topstone Industries,*

*Inc.*, 788 F.2d 151, 156 (3ʳᵈ Cir. 1986)).  The Court added, however, that the application of those factors must be faithful to the purposes of the Copyright Act.[3]  *Id*. at 535 n.19.

Since the Supreme Court's decision in *Fogerty*, courts in this Circuit have repeatedly looked to the factors identified in that opinion in deciding whether to award attorneys' fees in copyright cases.  *See, e.g., Brown v. Perdue*, No. 04 Civ. 7417, 2006 WL 2679936, *4 (S.D.N.Y. Sept. 15, 2006); *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006); *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, No. 04 Civ. 2110, 2005 WL 1949487, *2-3 (S.D.N.Y. Aug. 11, 2005); *NXIVM Corp. v. Ross Institute*, No. 1:03 CV 0976 GLSDRH, 1:03 CV 1051 GLSDRH, 2005 WL 1843275, *3-4  (N.D.N.Y. Aug. 2, 2005).  Of the various factors, the Second Circuit has emphasized that objective unreasonableness is one of the most significant and should be carefully weighed in determining whether an award of fees should be made. *Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 121-23 (2ⁿᵈ Cir. 2001); *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. at 357.  Typically, however, this factor has tended to play an important role in those cases where the court was considering whether fees should be awarded *against* an unsuccessful plaintiff, rather than *to* a successful plaintiff.  *Cf., e.g., Matthew Bender & Co., Inc.*, 240 F.3d at 121-23; *Brown v. Perdue*, 2006 WL 2679936; *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 2005 WL 1949487.

In reviewing the various factors identified in *Fogerty* the court is unable to conclude that the defendants' positions here were objectively unreasonable; they were entitled, as defendants, to require the plaintiff to prove their copyright claims.  They did not actively contest the

---

[3]Earlier in the opinion, after examining the purposes of the Copyright Act at some length, the Court emphasized that the primary objective of copyright was not to reward the labor of authors, but rather to provide a fair return for their creative labor in order to spur creativity for the public good. *Fogerty*, 510 U.S. at 126-27.

plaintiff's contentions concerning copyright ownership, and their possession of infringing copies of the plaintiff's copyrighted works. Nor does the court find any improper motivation or frivolousness in their positions. These factors are therefore neutral.

Considerations of compensation and deterrence, however, are paramount here. The failure by the defendants to simply concede liability after being shown that the plaintiff possessed valid copyrights in the infringed works has required the plaintiff to expend substantial attorneys' fees and incur substantial costs in obtaining summary judgment and enforcing their copyrights. Unless an award of fees and expenses is made, the plaintiff will not be fully compensated for its losses. In addition, the court is not confident that the damages awarded here will alone be sufficient to deter the defendants from future infringing conduct. Given the court's conclusion that each of these defendants either knew (Music Mahal and Soca House) or were likely aware (Taj Audio Video) of their infringing conduct, paying the damage award may well be viewed by them as simply a cost of doing business, one offset by the profits to be made through the sale of infringing works. *See, e.g., Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2nd Cir. 1999) (wilful infringement alone justifies an award of attorneys fees). The court therefore concludes that an award for attorneys' fees should be made, to be paid in equal shares by the three groups of defendants.

### 2. *Calculation of the Fee Award*

The calculation of attorneys' fees under the Copyright Act relies on the familiar "lodestar" approach employed under other federal fee-shifting statutes. *See Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 150-51 (2nd Cir. 2001); *Entral Group Intern., LLC v. Honey Cafe on 5th, Inc.*, No. 05 CV 2290 NGG MDG, 2006 WL 3694584, *9

(E.D.N.Y. Dec. 14, 2006); *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 360 (S.D.N.Y. 2006). The court calculates this fee by multiplying the number of reasonable hours expended on the litigation times a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To facilitate this analysis, the Second Circuit requires that attorneys applying for court-ordered compensation document the application with contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2nd Cir. 1983).

The plaintiff has submitted the sworn declaration of the lead attorney, accompanied by time sheets to establish the amount of attorney's fees and litigation costs incurred in prosecuting this action. The plaintiff seeks a total of $144,940 in attorneys' fees and $8,565.02 in costs. The rates at which the fees were charged were $375 and $350 per hour for the two partners of the law firm that represents the plaintiff, $100 per hour for associates, and $25 to$50 per hour for legal assistants. The rates for the partners are at the high end of, and perhaps somewhat above, the rates ordinarily charged in this district. *Compare, e.g., Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 205-08 (E.D.N.Y. 2006) ($350 hourly rate for partners in employment discrimination case); *Levy v. Powell*, No. CV-00-4499, 2005 WL 1719972, at *9 (E.D.N.Y. July 22, 2005) (surveying cases and concluding that "In 2003 and 2004, district courts in the Eastern District found rates of between $225.00 and $300.00 for partners to be reasonable") (citations omitted). On the other hand, the rates for the associates and legal assistants are below the normal range in the district. *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *4 (E.D.N.Y. June 13, 2005) (finding, in an environmental law case, reasonable rates of $200 to $250 for senior associates, and $100 to $150 for junior associates); *Perdue v.*

*City University of New York*, 13 F. Supp. 2d 326, 344-45 (E.D.N.Y. 1998) (holding almost ten years ago that $75 per hour was the prevailing paralegal rate in this district). On the notion that the somewhat higher than normal partner rates are balanced by the lower than normal associate and paralegal rates, the court finds no adjustment is necessary on account of the rates charged.

The reasonableness of the hours spent, however, raises concerns. By the court's calculation, the fees incurred with respect to the summary judgment motion alone total almost $50,000. That is excessive given that the motion was essentially uncontested and presented no particularly novel issues of law. Attorneys with the experience asserted by the partners would be expected to have numerous prior briefs on the issues upon which to draw to construct the papers submitted here. The papers were somewhat voluminous to be sure, but most of the volume was attributable to exhibits. The court also has questions about the reasonableness of some of the other time billed as reflected in the timesheets. For example, the two partners each billed 11.5 hours on the date of the seizures conducted by the U.S. Marshals Service. The billing entries reflect very little about what work was actually done,[4] and the work described does not appear to require legal expertise. Similarly, one of the partners charged 5.25 hours of time at $375 per hour for work described simply as "Preparation of inventory reconciliation." Poppe Decl., Ex. 3 entry at 8/20/2001. Records that do not adequately describe the nature of the work performed provide the court with justification for reducing a fee award accordingly. *E.g., Vernon v. Port Authority of New York and New Jersey*, 220 F. Supp. 2d 223, 229 (S.D.N.Y. 2002).

---

[4]The billing entry for William Poppe states, "Preparation of file for seizures, meet with U.S. Marshal, Pranav - seizure conducted at Music Mahal all seized good [sic] inventoried and delivered to P&B office - conference with MB." The entry for Megha Bhouraskar simply reads, "Tips raid at Music Mahal, Richmond Hill (Soca House and Taj Audio Video." Poppe Decl., Ex. 3, entries at 8/16/2001.

The combination of the excessiveness of the fees charged for the summary judgment motion and the inadequacy of the descriptions of some of the work performed raise concerns that the billing records as a whole contain surplusage. In setting fees under the "lodestar" method, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed "as a practical means of trimming fat from a fee application," *New York Association for Retarded Children v. Carey*, 711 F.2d at 1146, and courts in this Circuit have regularly done so. *E.g., Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (20% reduction *after* excluding time and reducing hourly rate); *Morin v. Nu-Way Plastering Inc.*, No. CV 03-405 (LDW)(ARL), 2005 WL 3470371, at *3 (E.D.N.Y. Dec. 19, 2005) (25% reduction); *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (40% reduction). Accordingly, the court finds that the concerns identified above warrant a 20% reduction in the amount of the attorneys' fees sought by the plaintiff.

### 3. Costs

The plaintiff also seeks a total of $8,565.02 in costs. Costs are ordinarily recoverable if they are "incidental and necessary to the litigation." *E.g., Tyco Intern. (US) Inc. v. John Does, 1-3*, No. 01 Civ.3856 (RCC)(DF), 2003 WL 23374767, at *7 (S.D.N.Y. Aug. 29, 2003) (citing *Reichman v. Bonsignore, Brignati & Mazzota P.C.*, 818 F.2d 278, 283 (2d Cir.1987). Most of the costs relate to items of expense for which awards are routinely made, including costs for process servers, postage, and photocopying. Other charges which are not as routine, but which the court finds to be incidental and necessary to this litigation include the fee charged by the U.S. Marshals Service in connection with the seizure ordered by the court and the premiums for the bond the plaintiff was required to post in connection with the seizure.

Two items, however, require further comment. First, the plaintiff seeks total of $707.99 for investigator fees and disbursements relating to investigative work undertaken prior to the inception of the litigation. There is considerable difference of opinion among courts in this circuit about whether such costs are recoverable. *Compare, e.g., J&J Sports Productions, Inc. v. Cargil Dehavalen*, No. 06 Civ. 1699 JGKMHD, 2007 WL 294101, at *4 (S.D.N.Y. Jan. 30, 2007) (recovery denied), *with Silhouette Intern. Schmied AG v. Vachik Chakhbazian*, No. 04 Civ. 3613 RJH AJP, 2004 WL 2211660, at *3 -4 (S.D.N.Y. Oct. 4, 2004) (recovery allowed); *see also, e.g., Tyco Intern. (US) Inc. v. John Does, 1-3*, No. 01 Civ.3856 (RCC)(DF), 2003 WL 23374767, at *7 (S.D.N.Y. Aug. 29, 2003); *Sylvester v. City of New York*, No. 03 Civ. 8760(FM), 2006 WL 3230152, *14 (S.D.N.Y. Nov. 8, 2006); *Kingvision Pay-Per-View Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 511 (E.D.N.Y. 2006); *Brown v. Party Poopers, Inc.*, No. 00 CIV. 4799 (JSM), 2001 WL 1380536, *7 (S.D.N.Y. July 9, 2001); *Arthur Kaplan Co., Inc. v. Panaria Intern., Inc.*, No. 96 CIV. 7973 HB, 1999 WL 253646, at *3 (S.D.N.Y. April 29, 1999).[5] The emerging view is that, if recovery for such fees is to be awarded, the application must be supported by information as to the reasonableness of the rates charged and the services performed. *E.g., Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 68 (E.D.N.Y. 2006); *Kingvision Pay-Per-View Ltd. v. Arnoat*, No. 06 Civ. 3616 (KMW)(GWG), 2007 WL

---

[5]The issue has received considerable attention recently in cases brought under the enforcement provisions of the Communications Act – 47 U.S.C. §§ 553 and 605. *See, e.g., Kingvision Pay-Per-View Ltd. v. Arnoat*, No. 06 Civ. 3616 (KMW)(GWG), 2007 WL 625367, at *4 (S.D.N.Y. Feb. 28, 2007); *J & J Sports Productions, Inc. v. Smith*, No. 06-CV-243 (CPS), 2007 WL 595090, at *5 (E.D.N.Y. Feb. 22, 2007); *J&J Sports Productions, Inc. v. Cargil Dehavalen*, No. 06 Civ. 1699 JGKMHD, 2007 WL 294101, at *4 (S.D.N.Y. Jan. 30, 2007); *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 68 (E.D.N.Y. 2006).

625367, at *4 (S.D.N.Y. Feb. 28, 2007). As no such information has been provided in support of the application here, the court does not recommend an award for investigative costs.

Second, although photocopying expenses are routinely awarded, the expenses here are extraordinarily high, totaling some $2,730.[6] Even at 10 cents per page, which is a high rate in the court's experience for bulk copying of the type identified here, this expense would produce some 27,300 pages of photocopies; the papers identified as being copied do not approach that number of pages. In addition to being high, all of the charges are unusual because they are round numbers, which is unexpected for expenses that are usually charged at pennies per page. Without greater detail concerning the number of photocopies and the reasonableness of the rate at which they were made, the court can recommend no more than a total of $1,000 for photocopies.

As reduced because of the above concerns, costs in the amount of $6,127.03 should be awarded, to be paid in equal shares by the three sets of defendants.

## CONCLUSION

In accordance with the above considerations, the undersigned hereby **RECOMMENDS**:

1. That plaintiff be awarded statutory damages in the amount of $300,000 as against the Music Mahal defendants, in the amount of $57,000 as against the Soca House defendants, and in the amount of $51,000 as against the Taj Audio Video defendants;

---

[6]The five entries for photocopy expenses are as follows: $480 for "Summons and Complaint, Seizure application"; $750 for "Amended Verified Complaint, Exhibits, VHS, DVD inventory, Poppe, Supp. Dec., Preliminary Injunction, certificates of service"; $750 for "summary judgment motion documents"; $500 for "Summary Judgment motion"; and $250 for "motion for statutory damages, fees". Poppe Decl., Ex. 3, Additional Charges, entries at 8/15/2001, 8/29/2001, 11/15/2002, 2/10/2003, 8/31/2003.

2.  That the plaintiff be awarded $115,952 for attorney's fees and $6,127.03 for costs, for a total of $122,079.03, with each set of defendants responsible to pay $40,693.01; and

3.  That the defendants be permanently enjoined from reproducing, distributing, manufacturing, or otherwise using plaintiff's sound recordings, name and artwork without authorization.

\*          \*          \*          \*          \*          \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985);  *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendants by regular mail and file proof of such service in the record.**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
            March 9, 2007

-22-